UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PIONEER SURGICAL TECHNOLOGY,
INC.,

      Plaintiff,

v.                                       Case No. 2:09-CV-271

VIKINGCRAFT SPINE, INC. and        HON. GORDON J. QUIST
ERIC HANSEN,

      Defendants.
_____/

## OPINION

      Plaintiff, Pioneer Surgical Technology, Inc. ("Pioneer"), has sued Defendants, VikingCraft Spine, Inc. ("VikingCraft") and Eric Hansen ("Hansen"), alleging diversity of citizenship as the basis for the Court's jurisdiction over the case. In its Amended Complaint, Pioneer alleges four claims against VikingCraft and Hansen: (1) breach of contract; (2) unjust enrichment/quantum meruit; (3) conversion; and (4) breach of non-compete agreement.

      VikingCraft and Hansen have moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. After careful consideration, the Court concludes that the parties' briefs adequately address the issues pertaining to the motion and that oral argument is unnecessary. For the reasons set forth below, the Court will grant the motion and dismiss the case without prejudice.

### BACKGROUND

      Pioneer is a Michigan corporation with its principal place of business in Marquette, Michigan. (Am. Compl. ¶ 4.) Pioneer develops and manufactures medical devices, including

specialized spine products, and it markets and sells its products through independent distributors pursuant to written Distributorship Agreements. (*Id.* ¶¶ 9, 10.)

VikingCraft is a California corporation with its principal place of business in California. (*Id.* ¶ 5.) Hansen is a citizen of, and resides in, California and is the President and sole owner of VikingCraft. (*Id.* ¶ 6; Hansen 4/7/10 Decl. ¶ 3.) VikingCraft serves as a sales representative for various medical product companies. (Hansen Decl. ¶ 4.) It sells and markets medical products exclusively in California and has never sold any products, nor does it have any offices, employees, or representatives, in Michigan. (*Id.*)

In approximately March 2006, a representative of Pioneer approached Hansen in California about the possibility of VikingCraft serving as a distributor of Pioneer's products in Southern California. (*Id.* ¶ 6.) In May 2006, VikingCraft and Pioneer executed a Distributorship Agreement (the "2006 Agreement") under which VikingCraft agreed to serve as Pioneer's Southern California distributor. Subsequently, on December 12, 2008, VikingCraft and Pioneer executed another Distributorship Agreement (the agreement at issue in this case) for VikingCraft to serve as Pioneer's California distributor (the " 2008 Agreement"). The 2008 Agreement provides that VikingCraft is entitled to commissions on "'Net Sales,'" determined as "'actual gross invoice price . . . less . . . credit allowances for returns <u>and write-off of doubtful accounts</u>.'" (Am. Compl. ¶ 13 (quoting 2008 Agreement Art. 1, Art. 5 § 5.6 (emphasis in original)).) The 2008 Agreement further provides that Pioneer is required to pay commissions to VikingCraft within 20 calendar days after the end of the month in which a sale is made. In some cases, this requirement could result in Pioneer paying a commission to VikingCraft before the customer actually pays Pioneer for the product. (*Id.* ¶ 14.) Recognizing the possibility that VikingCraft might receive a commission on a sale to which it is not entitled because the sale is subsequently determined to be uncollectible, the 2008 Agreement

2

requires VikingCraft to return to Pioneer any commission for which Pioneer deems the invoice to be uncollectible. (*Id.*)

During the terms of the 2006 Agreement and the 2008 Agreement, VikingCraft sold Pioneer's products to only four customers in Southern California, one of which was Downey Regional Medical Center-Hospital, Inc. (Hansen 4/7/10 Decl. ¶ 9.) In 2009, VikingCraft sold approximately $750,000.00 of Pioneer products to Downey. (*Id.* ¶ 11.) On September 14, 2009, Downey filed a Chapter 11 petition in the United States Bankruptcy Court for the Central District of California. Thereafter, Pioneer determined that the invoices to Downey for the sales by VikingCraft were uncollectible and demanded that VikingCraft return the $285,579.29 in commissions that Pioneer had paid VikingCraft for the Downey sales. (2d Am. Compl. ¶¶ 15-16.) Pioneer terminated the 2008 Agreement after VikingCraft failed to return the Downey Commissions, and it alleges that it is entitled to a judgment in the amount of the Downey commissions. Pioneer further alleges that after it terminated the 2008 Agreement, VikingCraft failed to return $359,280.55 of its inventory and other property, giving rise to a claim of conversion.[1] Finally, Pioneer alleges that VikingCraft has violated the non-competition provision of the 2008 Agreement following its termination by selling products of Pioneer's competitor to customers with whom VikingCraft had contact during the term of the 2008 Agreement.

## DISCUSSION

Proper venue in this case must be determined under the general venue statute, 28 U.S.C. § 1391, which provides in relevant part:

---

[1] VikingCraft denies that it possesses any of Pioneer's property. It claims that in November 2009, Pioneer representatives appeared at VikingCraft's offices in California and removed all of the inventory and other property belonging to Pioneer. Whether VikingCraft still possesses Pioneer's property is an issue not relevant to the instant motion and that must be left for another day.

3

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time that action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The parties agree that (a)(2) is the only applicable basis for venue in this district, as VikingCraft and Hansen both reside in California.

On a motion to dismiss for improper venue under Rule 12(b)(3), the plaintiff bears the burden of establishing that venue is proper. *Prakash v. Clinton*, No. 08 Civ. 09482(BSJ), 2010 WL 668816, at *3 (S.D.N.Y. Feb. 25, 2010) (quoting *French Transit v. Modern Coupon Sys.*, 858 F. Supp. 22, 25 (S.D.N.Y. 1994)). *See also J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08 CV 977, 2009 WL 385611, at *25 (N.D. Ohio Feb. 13, 2009) ("When a defendant seeks to dismiss a claim for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), plaintiff bears the burden of proving that venue is proper."). "[T]he court may examine facts outside of the complaint but 'must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.'" *Receiver of the Assets of Mid-Am. Energy, Inc. v. Coffman*, – F. Supp. 2d – , 2010 WL 2085513, at *6 (M.D. Tenn. 2010) (quoting *Gone to the Beach, LLC v. Choicepoint Serv.*, 434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006)). The plaintiff must show that venue is "proper for each claim and as to each defendant in order for the court to retain the action." *Verbis v. Iowa Dep't of Human Servs.*, 18 F. Supp. 2d 770, (W.D. Mich. 1998). *See also Shuman v. Computer Assocs. Int'l, Inc.*, 762 F. Supp. 114, 115 (E.D. Pa. 1991) ("In a case in which multiple defendants are joined, proper venue must be established as to each defendant. Similarly, in a case in which multiple claims are joined, venue must be proper for each claim.") (internal citations omitted).

Proper venue requires that "a substantial part of the events or omissions giving rise" to Pioneer's claims must have occurred in this district. Section 1391(a)(2) does not require a plaintiff to file its complaint in the district where the most substantial events giving rise to the claim occurred; rather, venue is proper in "any forum with a substantial connection to the plaintiff's claim." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998). Venue may thus be proper in two or more districts, even when most of the events occurred in one of the districts. *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994) (noting that a court is not to "ask which district among two or more potential forums is the 'best' venue" in determining whether a particular venue is proper). "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Therefore, "courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred." *Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4 (D.D.C. 2003) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003)).

Pioneer asserts that venue is proper in this district because the following events relating to its claims occurred here:

(1) Pioneer is headquartered in this district and negotiated and executed the 2008 Agreement here.

(2) Pioneer designs, develops, and manufactures the products VikingCraft sold under the 2008 Agreement here.

(3) Hansen traveled to Marquette, Michigan on several occasions in connection with his duties under the 2008 Agreement, including bringing prospective customers to Pioneer's facilities to introduce them to Pioneer's products.

(4) Hansen had weekly, if not daily, communications with Pioneer in Michigan, including calls to Pioneer's customer service department and engineering and marketing groups.

5

(5) Hansen submitted orders for Pioneer products to Marquette and Pioneer shipped orders to Hansen from Marquette.

(6) VikingCraft was required to return the commissions for the Downey sales to Pioneer in Marquette.

(7) Pioneer suffered injury in Marquette as a result of Defendants' wrongful acts in California.

(Blom Aff. ¶¶ 4-5, 7-11.)[2]

In this Court's judgment, Pioneer has failed to demonstrate a substantial connection between this district and Pioneer's claims at least for conversion and breach of the non-compete agreement. Venue must be proper for each claim. Thus, in a case such as this, where multiple claims are asserted, a court must consider the specific events giving rise to each claim in addressing whether a substantial connection exists.

Pioneer's conversion claim is based upon Defendants' alleged failure to return Pioneer's property that Defendants possessed in California. It is undisputed that Defendants' alleged refusal to relinquish the disputed property arose in California, thus, the conversion itself occurred in California. Other than asserting that Pioneer received the disputed property pursuant to the 2008 Agreement, Pioneer fails to show that any of the events relating to the alleged conversion have a *substantial* connection to this district. While Defendants certainly received the property at some point as a result of entering into the 2008 Agreement, the acts giving rise to conversion did not occur until sometime later when Pioneer made a demand for the property and Defendants refused to relinquish it. The existence of the 2008 Agreement, and Pioneer's residence in this district, alone,

---

[2] The Court notes Defendants' objections to the Blom affidavit on the grounds that the affiant lacks personal knowledge regarding several statements of fact and that several facts are inaccurate. While portions of the Blom affidavit appear to be defective for lack of personal knowledge, the Court finds it unnecessary to address the admissibility of Blom's statements because they are not material to the Court's disposition of the motion.

6

are insubstantial and do not create the required connection to this district. *See Henrich v. Field*, No. 05-CV-0798E(Sc), 2006 WL 2620043, at *2 (W.D.N.Y. Sept. 13, 2006) (finding no substantial contact between the plaintiff's conversion claim and New York, even though the plaintiff experienced the injury in New York, because the alleged conversion occurred in Delaware).

Pioneer similarly fails to show that its noncompete claim has a substantial connection with this district. The evidence before the Court shows that if Defendants have improperly competed with Pioneer, as alleged, the only sales they made were to customers in California. Again, while *some* connection exists between the noncompete claim and this forum, it is insubstantial for purposes of § 1391(a)(2). In *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366 (11th Cir. 2003), a case with similar facts, the Eleventh Circuit concluded that venue was improper in the plaintiff's home district. The plaintiff, an Alabama-based manufacturer and seller of bricks, engaged the defendant to sell its bricks in the Savannah, Georgia area. The plaintiff's representative presented the defendant with a noncompete agreement in Savannah and told the defendant that his signature was a necessary condition of continued employment with the plaintiff. A few years later, the defendant tendered his resignation and shortly thereafter began working for a competitor. The plaintiff filed suit in the Middle District of Alabama. The defendant moved to transfer venue pursuant to 28 U.S.C. § 1404(a), and the Alabama court granted the motion, implicitly concluding that venue was proper in Alabama. Following the transfer, the Georgia court, applying Georgia law, granted summary judgment for the defendant. The issue on appeal was whether Georgia or Alabama law applied, the answer to which depended on whether venue had been proper in Alabama. The Eleventh Circuit concluded that the Georgia district court correctly determined that Alabama was an improper forum under § 1391(a)(2). The court interpreted § 1391(a)(2)'s substantiality requirement as follows:

> The statute's language is instructive: venue is proper in "a judicial district in which a *substantial* part of the *events or omissions giving rise to the claim occurred*." 28 U.S.C. § 1391(a)(2) (emphasis added). Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a "substantial part" of the events are to be considered.

*Id.* at 1371. The court noted that the circumstances giving rise to the claim were the presentation of the agreement to the defendant, and his signing of the agreement, in Georgia; the agreement was intended to be performed primarily in Savannah (as reflected by the assigned territory); and the defendant's breach occurred in Georgia. The court reasoned, "none of the acts giving rise to Jenkins Brick's claim occurred in Alabama, much less a 'substantial part' of them." *Id.* at 1372. Finally, the court rejected the plaintiff's argument that the defendant's attendance at sales and training meetings in Alabama, receipt of salary and benefits from Alabama, and receipt of the agreement from Alabama were events having a substantial connection to the claim. The court observed that "these facts do not have a close nexus with the cause of action for breach of contract, and they are therefore irrelevant." *Id.* at 1372-73.

The court in *Half Price Books, Records, Magazines, Inc. v. Riepe*, No. CIV. A. 3:98-CV-0585-P, 1998 WL 329383 (June 12, 1998), reached a similar conclusion. The defendant in *Half Price Books* received the noncompete agreement in Texas and signed it in Washington. *Id.* at *4. The plaintiff alleged that the defendant breached the agreement by opening a competing store in Washington. The court disagreed, observing:

> Plaintiff alleges that Defendant opened a competing store in Washington in breach of the Agreement because Half Price also has stores in Washington. Defendant has opened one store (in Washington) and the other two stores which he apparently plans to open this year will also be located in Washington. It seems clear that, had Defendant not opened the store in Washington, there would not have been a breach of the Agreement and, as such, there would not have been a lawsuit. Although the Agreement helps establish [the defendant's] contacts with Texas, the formation of the Agreement in this District does not provide proper venue in this Court.

*Id.* at *6.

As in *Jenkins Brick* and *Half Price Books*, the events occurring in this district having any connection with the noncompete claim are too insubstantial to support venue. Defendants negotiated, signed, and received the 2008 Agreement in California. VikingCraft was to perform the 2008 Agreement in California. Finally, the alleged breach occurred in California. The fact that there is some tangential connection to this district does not make it a proper venue.[3]

In addition to the foregoing bases, Pioneer has failed to demonstrate proper venue with regard to Hansen. Hansen signed the 2008 Agreement on behalf of VikingCraft. Pioneer does not allege in its Amended Complaint, and there is no suggestion in the 2008 Agreement itself, that Hansen was a party to the 2008 Agreement in his individual capacity. The 2008 Agreement is the linchpin of Pioneer's venue argument, yet, Pioneer fails to explain how the 2008 Agreement could support venue in this district for a claim against Hansen. In similar circumstances, the Sixth Circuit held that an agent's execution of a contract on behalf of a corporate principal provided no basis for venue in a breach of contract claim against the agent. *See Mafcote Indus., Inc. v. Houchins*, No. 98-6248, 2000 WL 32058 (6th Cir. Jan. 7, 2000). The plaintiff in *Houchins* was a vendor to James River Paper Company and the defendant was a buyer for James River. In connection with a tour of the plaintiff's plant, the plaintiff required the defendant to sign a confidentiality agreement on behalf of James River. After the plaintiff ended its business relationship with James River, the plaintiff sued the defendant for breach of contract, conversion, and misappropriation of trade secrets based upon allegations that the defendant transmitted confidential information to a competitor of the plaintiff. The Sixth Circuit concluded that "venue was improper for plaintiff's breach of contract

---

[3] Pioneer contends that the circumstances of this case are analogous to those in *Steelcase, Inc. v. Mar-Mol Co.*, 210 F. Supp. 2d 920 (W.D. Mich. 2002), in which this Court rejected the defendants' assertion that venue in this district was improper. While this case and *Mar-Mol* share a few factual similarities, on the whole the circumstances are vastly different because the defendants in *Mar-Mol* directed numerous fraudulent statements to the plaintiff in Michigan that caused the plaintiff to take action, or refrain from taking action, in Michigan. There is no such alleged conduct in this case.

9

count because there were insufficient allegations that a substantial part of the events supporting liability arose in the judicial district. The complaint fails to indicate that defendant was acting other than as agent for James River." *Id.* at *2. Similarly, with regard to the breach of contract claim, Pioneer fails to allege that Hansen was acting as anything other than an agent for VikingCraft in signing the 2008 Agreement.

When a court determines that venue is improper, as the Court has in this case, it may exercise its discretion to dismiss the case or transfer it pursuant to 28 U.S.C. § 1406(a). *Bramlet*, 141 F.3d at 262. Because neither party has requested that the case be transferred, and finding no compelling reason to do so, the Court will exercise its discretion to dismiss the case.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.

An Order consistent with this Opinion will be entered.


Dated: July 21, 2010                  /s/ Gordon J. Quist
                                               GORDON J. QUIST
                                       UNITED STATES DISTRICT JUDGE